## A. M. BAGGER AND ANOTHER v. J. D. NUNAN.[1]

November 20, 1931.

No. 28,619.

[1]Reported in 239 N. W. 225.

*W. A. Marin* and *E. J. Culhane,* for appellants.

*Daniel F. Foley,* for J. D. Nunan as receiver for Gopher Manufacturing & Fuel Company, respondent.

HILTON, J.

Interveners, who are the executors of the last will and testament of Samuel Zimmermann, deceased, appeal from an order denying

their motion for a new trial. The subject matter of this action is certain insurance money ($2,150) paid by consent of parties to an escrow holder for fire damage to a building owned by the Gopher Manufacturing & Fuel Company.

The company was a Minnesota corporation, organized in 1920, with an issued capital stock of 211 shares, each of a par value of $100. John A. Lane was its president and the holder of 200 shares; a Mr. Shaffer was in some way interested in 10 of these shares; W. P. Crow held one qualifying share and was its secretary; one Farnham held 10 shares and was vice president. The evidence shows that but few meetings of directors or stockholders were held, and the minute book of the corporation was not accurately kept.

The company was engaged in the manufacturing and fuel business; owned and occupied a plant with a number of buildings thereon. Lane was the active manager of the affairs of the company and attended to practically all of its business. At the same time he was operating a loan and real estate business, a fire insurance agency, was treasurer of a church organization, made investment loans for clients, and managed other corporations. All of these business affairs were conducted in Lane's office in the Plymouth building, Minneapolis. For all of these various activities there was but one bank account, and that was in the name of John A. Lane in a Minneapolis bank. All monies received by him, not only on his own account, but for the various enterprises in which he was interested, went into this one bank account.

On August 2, 1926, Samuel Zimmermann, of whose estate interveners are executors, placed in the hands of Lane $2,500, which he requested the latter to loan for him on a first mortgage, preferably one on a bungalow or duplex. The $2,500 was evidenced by a draft, which was deposited in the account standing in the name of Lane. Lane did not make a loan for Zimmermann on a duplex or bungalow. No mortgage was ever prepared by Lane or anyone else in favor of Zimmermann on any property of the company.

On July 7, 1927, J. D. Nunan was appointed receiver of the company, duly qualified as such, and has since continued to act in that capacity.

The evidence failed to disclose that Zimmermann knew the description of the company's property, the condition of its title, or ever saw an abstract thereof, or that he was ever on the premises or knew anything about the company's property. There was no evidence that directly or indirectly showed or attempted to show, by inference or otherwise, that the $2,500 or any part thereof was charged to the account of the company or was used by it. As to whether the claimed mortgage which Zimmermann was to have was to be a first or second mortgage, when the same was to mature, the rate of interest it was to bear, or whether it was to be on a dwelling or business site the record furnishes no light.

Attached to the policy of insurance was a loss-payable clause reading:

"Subject to the stipulations, provisions and conditions contained in this policy, the loss, if any, is payable to E. E. Howe, mortgagee, or his assigns, under items 1-6 & 7; and to Sam Zimmermann, mtgee, or his assigns, under Item 3; as their respective interest may appear."

Fire damaged the compound building of the company, which was covered by Item 3, to the extent of $3,364.44. As before stated, the money due on Item 3 was placed in escrow. Seventy-five dollars interest due on the $2,500 turned over to Lane by Zimmermann was paid to him by Lane with a check on Lane's account in the bank, as was also $350 (represented by two checks) on the principal, leaving $2,150 unpaid thereon.

Zimmermann being dead, it was not competent for Lane to testify as to any conversation had with him. Shortly after Zimmermann's death, Lane told an attorney, who is now representing interveners, that he, Lane, had not taken the matter of placing the mortgage on the company's property up with Zimmermann, but that he, Lane, had such a mortgage in mind and had Zimmermann's name placed in an insurance policy as mortgagee with a view of protecting Mr. Zimmermann and getting his consent to such a mortgage. As stated before, he did not take the matter up with Zimmermann nor secure his consent. Lane's admissions to the attorney as to what

his intentions were fall far short of supporting interveners' claim. A receiver was later appointed for Lane.

Upon the state of the record it is manifest that Zimmermann had the right to recover the $2,500 from Lane. The latter never told Zimmermann of the insurance deal or that he had made a loan for him to the company. Zimmermann never agreed to make such a loan. The burden of course was on interveners to prove that such a loan was made. Evidently Lane's purpose in putting the loss-payable clause of the policy in favor of Zimmermann was to secure Zimmermann in case he should agree to take such a mortgage. No such mortgage was made. No one knew of the loss-payable clause excepting Lane and Crow.

The court, after reciting that the company was the equitable owner of the described real estate and that it was in the actual, open, and notorious possession thereof, stated that Lane had no right, title, or interest therein other than as a stockholder of the company. It further found that Zimmermann, as a matter of fact, loaned the $2,500 to Lane, and that the latter without the knowledge, permission, or consent of the company, or without any consideration moving to the company, made an attempted assignment of a certain interest in the policy to Zimmermann; that no part of said money so loaned to Lane was received or used by the company. The findings were justified by the evidence.

As conclusions of law the court held that Zimmermann never acquired any right, title, or interest in or to said insurance policies or the proceeds thereof, and that interveners should take nothing by this action; also that the action be dismissed with prejudice to Zimmermann and the executors of his will. It was further found that the bank escrow holder held the $2,150 for the receiver of the company, and that Zimmermann and his executors have no right, title, or interest thereto, and payment of the money to the receiver was directed, together with costs and disbursements.

Many cases cited by appellants relative to "a one-man corporation," the using of a corporation for the purpose of evading the law, unlawful practices, as a cover for fraud, a veil to conceal fraudulent transactions, etc. are of course good law in cases where the facts

494

warrant their application. However, they are without point here. This case is decided upon the facts as found.

Upon the evidence disclosed in the record, we have no hesitancy in holding that the conclusion reached by the trial court was correct.

Affirmed.

[1]Reported in 239 N. W. 157.